# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DELANA DITTERLINE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CAUSE NO. 03-CV-857-WDS |
| | ) (Consolidated with 04-CV-153-GPM) |
| | ) |
| STATE OF ILLINOIS, ILLINOIS | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on defendant's motion for summary judgment on the claims of plaintiff Delana Ditterline (Doc. 51), to which Ditterline has filed a response (Doc. 63), and defendant a reply (Doc. 74). Plaintiff is one of twelve plaintiffs who have filed suit against the State of Illinois Department of Corrections for alleged discrimination on the basis of sex in the terms, conditions and privileges of employment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[1]

Defendant seeks summary judgment on the grounds that plaintiff cannot demonstrate that she was subjected to a hostile work environment; cannot establish retaliation because she did not suffer adverse employment action, cannot show she was performing her job in a satisfactory manner, has failed to show how anyone similarly situated was treated more favorably and the defendant has a legitimate reason for the employment action and plaintiff cannot establish a

---

[1] This motion arises from two cases which are consolidated. The original action, 03-857, *Walker v. State of Ill. Dep't of Corrections*, sought recovery for discrimination based on sex and retaliation. The second, *Fletcher v. Dep't of Corrections*, 04-153, was filed on behalf of 12 plaintiffs, including plaintiff Walker from 03-857, and seeks recovery against IDOC for discrimination based on sexual harassment and retaliation.

pretext.

## **BACKGROUND**

Plaintiff is a female correctional officer for the Illinois Department of Corrections at the Tamms prison facility. In Count X of the complaint (filed in Cause No. 04-153), plaintiff claims that she was assigned to work in the control room, and that from November 6, 2001, to January of 2002, she was subjected to various forms of sexual harassment by Captain Tony Elder, her immediate supervisor. He allegedly bragged about his sexual prowess and the size of his penis; asked plaintiff about her sex life with her husband; offered to shower with her; spent large amounts of time with and around her; would enter her office through a back door to be alone with her; and would call her on the telephone and breathe heavily. In addition, he also allegedly offered to have sex with her in the back seat of her car. On January 20, 2002, plaintiff filed an incident report concerning Elder's treatment and gave the report to Lt. Sanders, her Zone Lieutenant. She alleges that there was no investigation made on her complaint; that scheduled meetings with the Department's affirmative action office were missed by the Department's representative; and that she has been ostracized by her co-workers and has been retaliated against for making the complaint.

Plaintiff alleges that the harassment occurred not only at work, but also at her home because Elder would call and leave messages for plaintiff there. After filing the incident report, plaintiff found the words "sucker" and "bitch" written on her car.

## **REVIEW STANDARDS**

**1.    Sexual Harassment Standards**

Title VII provides, "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race color, religion, sex, or national origin [.]" 42 U.S.C. § 2000e-2(a)(1). Under Title VII, employers are prohibited from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 701 (7th Cir. 2001).

To prevail on her hostile work environment claim, plaintiff must establish that:

> (1) she was subjected to unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability.

*Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004). To prove "hostile work environment," the alleged harassment must be "both subjectively and objectively so severe or pervasive as to alter the conditions of her employment and create an abusive working environment." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004). "In determining whether the environment was objectively hostile, a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." *Id.* at 975-76. Notably, the threshold for plaintiff is high, as "[t]he workplace that is actionable is one that is 'hellish.'" *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997).

To evaluate whether a plaintiff's work environment was hostile, the Court must examine all of the circumstances surrounding the allegedly harassing activity, such as the "frequency of

the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *see also Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir. 1993). These factors are evaluated, in accordance with *Harris,* from both an objective and a subjective viewpoint:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is not a Title VII violation.

*Harris*, 510 U.S. at 21-22. The Seventh Circuit has repeatedly held that "isolated and innocuous incidents do not support a finding of sexual harassment." *See, e.g., Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 708 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 444 (7th Cir. 1994).

### 2. <u>**Employer Liability**</u>

An employer's liability for sexual harassment "hinges on whether the harasser is the victim's supervisor or merely a co-employee." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002). The Seventh Circuit has defined a supervisor as one with the "power to hire, fire, demote, promote, transfer, or discipline an employee." *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998).

Therefore, even if the actions alleged support sexual harassment, for there to be employer liability, plaintiff must show that she suffered tangible employment action. Without this showing, the defendant is entitled to establish an affirmative defense consisting of two elements:

4

"(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 , 765 (1998); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

Employers are liable for a coworker's harassment only "when they have been negligent either in discovering or remedying the harassment." *Perry,* 126 F.3d at 1013. An employer satisfies its legal duty in coworker harassment cases "if it takes reasonable steps to discover and rectify acts of . . . harassment of its employees." *Parkins*, 163 F.3d at 1032 (internal quotation marks omitted).

In *Ellerth* and *Faragher*, the Supreme Court stated that:

> [W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807-08. The Court made clear that compliance with an employer's designated complaint procedure is not the sole means by which an employee can fulfill her "coordinate duty to avoid or mitigate harm." *Faragher*, 524 U.S. at 806. Rather, under the functional approach established in *Ellerth/ Faragher*, an employer must prove that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765.

Therefore, it is the employer's knowledge of the misconduct which is critical, not how the employer came to have that knowledge. *See Durkin v. City of Chicago*, 341 F.3d 606, 612

5

(7th Cir. 2003); *Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir. 1999). The Seventh Circuit has held that in general, an employer is not held responsible for knowing about the harassment "unless the employee makes a concerted effort to inform the employer that a problem exists." *Silk,* 194 F.3d at 807 (internal quotation omitted) (*quoted in Rhodes,* 359 F.3d at 506-07 ). An employer has been held to have had constructive notice where the harassment is sufficiently obvious. *Mason v. S. Ill. Univ.*, 233 F.3d 1036, 1046, n. 8 (7th Cir. 2000); *Zimmerman v. Cook County Sheriff's Dep't*, 96 F.3d 1017, 1018 (7th Cir. 1996). Notably, "the law against sexual harassment is not self-enforcing." *Perry*, 126 F.3d at 1014. Unless the employer has knowledge of harassing conduct, "the law does not require an employer to do more than promote general anti-harassment policies and training to ensure compliance with Title VII." *Rhodes*, 359 F.3d at 507; *See Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 569 (7th Cir. 2001).

To survive summary judgment plaintiff must establish that she was subjected to unwelcome harassment on the basis of her sex, the harassment was so severe or pervasive as to alter the conditions of her work environment, and there is some basis for employer liability. *See Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004). The relevant conduct must have been sufficiently severe so that the plaintiff subjectively found the conduct to be hostile and a reasonable person would also find it to be hostile. *See Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2000). The Court **FINDS** that plaintiff has established that Elder's alleged conduct was sufficiently severe and pervasive to establish a prima facie case of hostile work environment sexual harassment. The relevant inquiry, then, is whether plaintiff adequately alerted her employer to the harassment, thereby satisfying her obligation to avoid the harm, not whether she followed the letter of the reporting procedures set out in the employer's harassment

6

policy.

## ANALYSIS

### A. PLAINTIFF'S CLAIM OF SEXUAL HARASSMENT

#### 1. Role of Capt. Elder

Harassment by a co-worker is treated differently from harassment by a supervisor. The first issue which arises, therefore, is whether Captain Elder was a supervisor of the plaintiff. If so, then the Court must determine if the plaintiff suffered a tangible employment action as a result of her supervisor's activities. In *Parkins*, the court defined the difference between a co-employee and supervisor. "It is manifest that the essence of a supervisory status is the authority to affect the terms and conditions of the victim's employment." 163 F.3d at 1032. "[M]erely having the authority to oversee aspects of another employee's job performance does not qualify as a supervisor in the Title VII context." *Rhodes v. Ill. Dep't Of Nat. Res.*, 359 F.3d 498, 506 (7th Cir. 2004).

Harassment by a supervisor of the plaintiff triggers strict liability, subject to the possibility of an affirmative defense in the event the plaintiff suffered no tangible employment action. *See Parkins*, 163 F.3d at 1032; *But see,Faragher*, 524 U.S. at 807-08 (where the Court held that no affirmative defense is available to an employer in a sexual harassment case when the supervisor's harassment culminates in a tangible employment action such as discharge, demotion or undesirable reassignment).

The defendant asserts that Elder was not plaintiff's supervisor, but offers little in support of that claim. The record reveals that plaintiff's shift-commander was Capt. Elder, and that she worked for a period of a couple of weeks out of his office in the operation's office. During that

time he assigned her jobs, such as updating the Rolodex, going through paperwork, getting the log books and making sure they were signed. After that time, she was assigned to the Core Control Unit. Elder would, thereafter, come to the Core Control Unit three or four times a week. She would admit him, on the understanding that she was obligated to admit a supervisor, but not another officer without the supervisor's approval. (Ditterline Dep. at 16). She was told when she first went to work in the control room that a captain has access to go anywhere and does not have to be logged in, as would regular officers (*Id.* at 30-31). It appears, therefore, from the record that Elder may have had enough control over the plaintiff to qualify as a supervisor of plaintiff.

### 2. Tangible Employment Action or Defendant's Failure to Discover or Remedy the Harassment

Having determined that Elder qualifies as a supervisor of plaintiff, the Court must next determine whether plaintiff has established that she suffered a tangible employment action. A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Faragher,* 524 U.S. at 761. Plaintiff does not claim that she was given different job assignments by Elder. Therefore, absent evidence of direct tangible employment action, to survive summary judgment, the plaintiff must show that the defendant was "negligent in discovering or remedying the harassment." *Durkin*, 341 F.3d at 612. Vicarious liability would, therefore, be the only remaining claim which plaintiff could assert against the IDOC because there is no evidence in the record that the harassment resulted in a change in status amounting to a tangible employment action. However, even if plaintiff can make such a showing, the defendant may be entitled to the affirmative defense established in *Ellerth* and *Faragher*. This defense is available if the defendant can show "(a) that the employer

exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). When a supervisor is the harasser, the employer is strictly liable for his or her conduct, subject to any affirmative defenses that may preclude its liability. *Parkins*, 163 F.3d at 1032.

### A. Did Defendant Take Reasonable Care to Prevent and Correct Harassing Behavior?

Plaintiff asserts that the defendant did not exercise reasonable care to prevent and promptly correct sexually harassing conduct. The defendant asserts that it took reasonable care to prevent and correct the action promptly. Although employers are not required to have perfect knowledge of their employees' activities, the issue is whether once they had sufficient notice of the action the employer took remedial action to correct the conduct. Plaintiff asserts that after she filed her complaint, the defendant ignored the complaint and did not act on it. Plaintiff further asserts that although the defendant had policies, it did not seriously train its investigators or supervisors how to implement the policies.

The record reveals that on January 20, 2002, plaintiff complained to Lt. Sanders who directed her to submit an incident complaint, which she did. Sanders also completed an incident report on that same date, and forwarded that to his supervisor, Captain Johnson, who completed a report, also on January 20, 2002, and sent it on to the Duty Administrative Officer, Superintendent Gossett. On January 22, 2002, Warden Welborn received the incident report from Johnson and forwarded it to Janet Richmond, who is the administrator of the Office of Administrative Action. (Doc. 51, Ex. 2, pp. 42-43; Ex. A, pp. 10, 16-17; Ex. 39).

9

Once plaintiff submitted her incident report, Assistant Warden Page instructed that Elder was not to have contact with plaintiff "unless it was work related." (Elder Dep. Ex 41, p. 50; Ex. 39). Elder had been moved to a different shift on January 14, 2002 (before the incident report was filed). Plaintiff stated that she did not complain earlier because she did not think that anyone would listen to her. (Ex. 2, p. 55).

In February of 2002, Richmond assigned Pat Mayberry, an Affirmative Action Officer who handled EEOC and discrimination complaints for the defendant, to conduct an investigation. (Doc. 51, Ex. 8, pp. 8-9). Mayberry testified that she attempted to meet with plaintiff on two different occasions in February of 2002 but had to cancel due to car trouble. She also testified that it may take months or days to investigate a claim of sexual harassment (*Id.* at 14), and although there is an "ideal framework" for responding to and taking corrective action regarding a complaint of sexual harassment, it cannot always be met. (*Id.*). Mayberry retired in March of 2002, and the investigation was transferred to Eva Moore, who was, in 2002, an officer in internal affairs at Menard (Doc. 51, Ex. 9, pp. 72-74).

Moore testified that she interviewed the plaintiff and several others on March 18, 2002 about the alleged conduct. (Doc. 51, Ex. 10, Moore Dep. pp. 76-79). Among those she interviewed were Lt. Sanders, Captain Johnson, Captain Elder, Captain Roper, seven correctional officers and others. Plaintiff has subsequently identified other employees who she believes could be interviewed, but did not relay these names to Moore at the time of the investigative interviews.

Charles Roper, who was a shift commander at Tamms during the time in question, testified as to the sexual harassment training which supervisors received and that he was unaware

if Elder received any discipline after the Ditterline complaint, but that Elder was moved to a different shift. (Doc. 51, Ex. 12, pp. 10-13).

"Title VII is designed to encourage the creation of antiharassment polices and effective grievance mechanisms." *Ellerth*, 524 U.S. at 764. However, a sexual harassment policy must provide for "effective grievance mechanisms" and therefore the mere creation of a sexual harassment policy will not shield a company from its responsibility to actively prevent sexual harassment in the workplace. The policy itself should provide for a process whereby an employee can express his or her concerns regarding an individual within a working environment. Thus, the question then becomes whether the IDOC, with its sexual harassment policy in place, the preventative part of the test, thereafter took reasonable care to prevent sexual harassment. *See, Shaw v. AutoZone, Inc.*, 180 F.3d 806, 812 (7th Cir. 1999) ("[T]he law does not require success—it only requires that an employer act reasonably to prevent sexual harassment.").

The record reveals that there clearly was in place a process by which claims of sexual harassment were to be examined and investigated at IDOC. In addition, there was a sexual harassment policy, which was widely distributed to employees. The policy and the process were put into place once plaintiff made her initial complaint to Lt. Sanders on January 20, 2002. When reviewing whether an employer took reasonable steps to discovery and correct acts of sexual harassment, the test courts will apply is one of reasonableness. *Baskerville v. Culligan Int'l*, 50 F.3d 428, 432 (7th Cir. 1996).

Here, the actions taken by the defendant once it knew of the claim of harassment by plaintiff were, objectively, reasonable.  As soon as plaintiff filed her incident report, the report was sent on to others in the Administration hierarchy, and there is no evidence of delay in that

process or in the action that was taken. Elder was instructed not to have any contact with plaintiff within a few days of the filing of the report. The complaint was investigated, and plaintiff acknowledged that the investigation was accurate and complete. (Ex. 2, p. 51). Although the investigation was slow to start due to the retirement of Mayberry, there is nothing in the record to show that the investigation was deliberately slowed by IDOC administration or officials. The plaintiff simply has not shown that the defendant was "negligent in discovering or remedying the harassment." *Durkin* 341 F.3d at 612.

Therefore, although plaintiff has established that she was subject to sexual harassment and that Elder was her supervisor, the defendant is nonetheless entitled to summary judgment because the defendant has properly asserted the *Ellerth* defense[2] and is, therefore not strictly liable for plaintiff's claims of sexual harassment.

### B. PLAINTIFF'S CLAIM OF RETALIATION

Ditterline has also raised a claim of retaliation for filing her claim of harassment. Specifically, she claims that her car was vandalized; someone drew an unflattering picture of her and left it in G Control; that people did not want to work with her; and, that she was not reassigned within an appropriate time period. She also asserts that the Warden was backdating her time-off requests because they did not arrive in the personnel office in a timely manner.

The Seventh Circuit noted in *Whitaker v. N. Ill. Univ.* 424 F.3d 640, 648 (7th Cir. 2005), that the standards for "actionable adverse action for discrimination claims under § 2000e-2(a) and retaliation claims under § 2000e-3(a) are not identical." *Id.* at 647. "Section 2000e-3(a) is 'broader' than § 2000e-2(a) in the sense that retaliation may take so many forms, while

---

[2]The Court notes that this affirmative defense was raised in the answers filed in both 03-857 and 04-153, and was therefore preserved for summary judgment consideration.

§ 2000e-2(a) is limited to discrimination 'with respect to [the worker's] compensation, terms, conditions, or privileges of employment.' *Id.* (*quoting Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, (7th Cir. 2005)).

To survive summary judgment, plaintiff must provide admissible evidence of retaliation under the direct or indirect methods of proof. *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Plaintiff has no evidence under the direct method, which requires either an admission of retaliation or statements or conduct from the decision-maker from which retaliation may be inferred. *See, Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000).

To establish a claim of retaliation under the indirect method, a plaintiff must establish that "(1) after lodging a complaint about discrimination, (2) only [she], and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) [she] was performing [her] job in a satisfactory manner." *Stone* 281 F.3d at 642. Thereafter, the burden shifts, requiring the defendant to provide a noninvidious reason for the adverse action; "[o]therwise there must be a trial." *Id.* at 644.

Therefore, plaintiff must show she suffered an adverse employment action. "Typically, adverse employment actions are economic injuries." *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002). Of course, "adverse job action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996) (*quoting Collins v. State of Ill.*, 830 F.2d 692, 703 (7th Cir. 1987)). "[T]he adverse action must materially alter the terms and conditions of employment." *Stutler v. Ill. Dept. of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001).

The terms and conditions of plaintiff's employment, arguably were so altered. Although this is, in the Court's opinion, a thin claim, it nevertheless survives summary judgment. The plaintiff was allegedly subject to harassing activities by fellow employees once she filed her incident report. The Seventh Circuit has held that harassment from fellow workers and gossip can rise to the level of an adverse employment action. *Knox v. State of Ind.*, 93 F. 3d 1327, 1334-35 (7th Cir. 1996) (finding that permitting fellow employees to punish plaintiff for invoking her rights under Title VII, was actionable as retaliation). Further, although the defendant asserts that plaintiff did not lose money "permanently" by virtue of the delayed approval of her timely Family and Medical Leave requests, the fact that her requests resulted in docked pay, even if eventually remedied, could rise to the level of retaliation.

Accordingly, the Court **GRANTS** in part and **DENIES** in part defendant's motion. Summary judgment is **GRANTED** in favor of defendant, State of Illinois Department of Corrections, and against plaintiff Delana Ditterline, on plaintiff's sexual harassment claim and **DENIED** on her retaliation claim.

**IT IS SO ORDERED.**

**DATED: June 13, 2006.**

    **s/ WILLIAM D. STIEHL**
    **DISTRICT JUDGE**