# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DIANA HILLIARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 03-CV-857-WDS |
| ) | |
| STATE OF ILLINOIS, ILLINOIS ) | |
| DEPARTMENT OF CORRECTIONS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on defendant's motion for summary judgment on the claims of plaintiff Diana Hilliard (Doc. 54), to which plaintiff Hilliard has responded (Doc. 64), and defendant has replied (Doc. 73). Plaintiff is one of twelve plaintiffs who have filed suit against the State of Illinois Department of Corrections ("IDOC") for alleged discrimination on the basis of sex in the terms, conditions and privileges of employment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[1]

The defendant seeks summary judgment on several grounds: (1) certain of plaintiff's claims are time barred; (2) plaintiff cannot establish a claim of sexual harassment; and (3) plaintiff cannot establish a retaliation claim because she did not suffer an adverse employment action.

---

[1] This motion arises from two cases which are consolidated. The original action, 03-857, *Walker v. State of Ill. Dep't of Corrections*, sought recovery for discrimination based on sex and retaliation. The second, *Fletcher v. Dep't of Corrections*, 04-153, was filed on behalf of 12 plaintiffs, including plaintiff Walker from 03-857, and seeks recovery against IDOC for discrimination based on sexual harassment and retaliation.

## BACKGROUND

Plaintiff is a female correctional officer for the Illinois Department of Corrections at the Menard prison facility. In Count XI of the complaint (filed in Cause NO. 04-153), Hilliard claims that she was subjected to various forms of sexual harassment by correctional officer Blaine Ozment, including unwanted touching and sexual comments. Hilliard alleges that on June 11, 2000, she reported the behavior to Lieutenant Robert Walker, who instructed her to "just stay away." Walker spoke to Captain Lloyd Korando concerning Hilliard's complaints. Plaintiff alleges that Korando also told her to simply avoid Ozment. Korando told Hilliard that he would speak with Ozment, and if the behaviors persisted, she would have to submit a written complaint. The unwanted behavior allegedly continued, though plaintiff cites no particular occurrences for the time period of summer of 2000 through March 22, 2001.

Plaintiff eventually requested to be assigned to work the tower so that she would avoid working directly with Ozment. While working the tower, plaintiff allegedly heard threatening comments over the intercom system, which she believes were directed at her. Hilliard attempted to meet with Captain Korando concerning these threats, but was unable to do so. She presented her complaint to Lieutenant Walker who instructed her to write up a statement. Plaintiff submitted her written statement to Walker on April 2, 2001. Major Stanley Bucheit further investigated the claims, and Tom Carroway, Director of Internal Affairs, interviewed plaintiff regarding her complaints on April 5, 2001.

Ozment allegedly called plaintiff a "bitch" on April 15, 2001. On April 26 and May 10, 2001, plaintiff found the words "snitch" and/or "bitch" written on her personal water cup.

Plaintiff claims she has found threatening notes on her car and in her mailbox at work. She alleges that she continues to be ostracized by her co-workers and supervisors as a result of her complaints of sexual harassment.

**<u>Standard</u>**

A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c): *see also Celotex Corp. V. Catrett*, 477 U.S. 317, 322–23 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1999) (citing *Celotex*, 477 U.S. at 323). Once a motion for summary judgment has been made and properly supported, however, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. *See Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

## ANALYSIS

**1.    The Timeliness of Plaintiff Hilliard's Complaint**

The defendant asserts that certain allegations contained in plaintiff's complaint are time barred because they occurred more than 300 days before she filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Specifically, defendant claims that the court should not entertain evidence of any alleged discrete acts of sexual harassment that occurred prior to July 21, 2000. In her response, plaintiff asserts that she is not complaining of single discrete acts that amount to sexual harassment in and of themselves, but is instead complaining of a series of acts and events that, taken in sum, constitute a continuing violation. Therefore, plaintiff argues, as long as any one incident which comprises the hostile environment falls within the applicable limitation period, she is entitled to relief for all the incidence she endured as an employee of the IDOC.[2]

Title VII requires that a plaintiff in a deferral state, such as Illinois, file a charge of discrimination with the EEOC or an equivalent state agency within 300 days of an "alleged unlawful employment practice." 42 U.S.C. § 200e-5(e)(1); *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001). Plaintiff filed her EEOC charge on May 21, 2001. (Ex. 49). Therefore, any claims regarding activities that occurred prior to July 18, 2000, would be time barred under the general rule. Like most general rules, however, there is an exception. Activity occurring beyond the 300 day limitations period can be challenged if it is part of a pattern of discrimination that extended into the limitations period. *Chambers v. American Trans Air, Inc.*,

---

[2]Plaintiff's response actually refers to plaintiff Miller-Crisler in articulating this argument. However, the Court will construe this as an editing error and will consider this argument in deciding the issues relating to Hilliard. In any event, as discussed above, defendant has the initial burden of supporting its motion, so any typographical or even substantive shortcomings of plaintiff's are not dispositive.

17 F.3d 998, 1003 (7th Cir. 1994). This pattern of activity is referred to as a "continuing violation." *Id.*

The Seventh Circuit recognizes three theories under which a plaintiff may establish a continuing violation. *Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 120-21 (7th Cir. 1982); *Tinner v. United Insurance Co. of America*, 308 F.3d 697, 707 (7th Cir. 2002). The first situation occurs when an employer makes employment decisions over a range of time that make it difficult for the employee to determine the actual date of discrimination. *Tinner*, 308 F.3d at 707. This theory does not apply to plaintiff Hilliard as she is able to point to specific dates upon which she alleges she was harassed by specific people. Further, employment decisions made by the IDOC regarding Hilliard were favorable.[3] The second situation arises when an employer follows an express discriminatory policy. *Id.* Hilliard does not allege that the IDOC followed an express discriminatory policy in its actions; therefore, the second theory is also inapplicable.

Accordingly, to survive summary judgment as to her allegations of harassment prior to July 21, 2000, Hilliard must be able to prove a continuing violation under the third theory, where individual acts are part of an ongoing pattern and at least one of the acts occurred within the applicable limitations period. *Young v. Will County Dept. Of Pub. Aid*, 882 F.2d 290, 292 (7th Cir. 1989).

Hostile environment claims, such as plaintiff's, involve repeated conduct by their very nature. The "unlawful employment practice" therefore cannot be said to have occurred on any particular day. "It occurs over a series of days or perhaps years and, in direct contrast to discrete

---

[3] Plaintiff was promoted to the position of Corrections Food Service Supervisor I on January 16, 2004. (Ex. 46 to defendant's statement of material facts). She was again promoted on May 1, 2004, this time to the position of Food Supervisor II. (Ex. 47 to defendant's statement of material facts).

acts, a single act of harassment may not be actionable on its own." *National R.R. Passenger Corp. V. Morgan*, 536 U.S. 101, 115 (2002).

> A hostile work enviornment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability.

*Id.* at 117.

The Court, therefore, **FINDS** that the acts complained of by plaintiff constitute a claim of hostile work environment. Since at least one of the acts complained of falls within the 300-day filing period, her petition is timely and the Court will consider the entire time period covered by plaintiff's allegations in determining liability.

### 2. Plaintiff's Sexual Harassment Claim

Title VII provides, "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Under Title VII, employers are prohibited from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21(1993); *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 701 (7th Cir.2001).

To prevail on her hostile work environment claim, plaintiff must establish that:

> (1) she was subjected to unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual

> nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability.

*Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004). To prove "hostile work environment," the alleged harassment must be "both subjectively and objectively so severe or pervasive as to alter the conditions of her employment and create an abusive working environment." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir.2004). "In determining whether the environment was objectively hostile, a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." *Id.* at 975-76. Notably, the threshold for plaintiff is high, as "[t]he workplace that is actionable is one that is 'hellish.'" *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir.1997).

To evaluate whether a plaintiff's work environment was hostile, the Court must examine all of the circumstances surrounding the allegedly harassing activity, such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir.1993). These factors are evaluated, in accordance with *Harris,* from both an objective and a subjective viewpoint:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and

7

there is not a Title VII violation.

*Harris*, 510 U.S. at 21-22. The Seventh Circuit has repeatedly held that "isolated and innocuous incidents do not support a finding of sexual harassment." *See, e.g., Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 708 (7th Cir.1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 444 (7th Cir.1994).

An employer's liability for sexual harassment "hinges on whether the harasser is the victim's supervisor or merely a co-employee." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir.2002). The Seventh Circuit has defined a supervisor as one with the "power to hire, fire, demote, promote, transfer, or discipline an employee." *Parkins v. Civil Constructors of Ill.*, Inc., 163 F.3d 1027, 1034 (7th Cir.1998).

Therefore, even if the actions alleged support sexual harassment, for there to be employer liability, plaintiff must show that she suffered tangible employment action. Without this showing, the defendant is entitled to establish an affirmative defense consisting of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 , 765 (1998); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

Employers are liable for a coworker's harassment only "when they have been negligent either in discovering or remedying the harassment." *Perry,*126 F.3d at 1013. An employer satisfies its legal duty in coworker harassment cases "if it takes reasonable steps to discover and rectify acts of . . . harassment of its employees." *Parkins*, 163 F.3d at 1032 (internal quotation

marks omitted).

In *Ellerth* and *Faragher*, the Supreme Court stated that "while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807-08. The Court made clear that compliance with an employer's designated complaint procedure is not the sole means by which an employee can fulfill her "coordinate duty to avoid or mitigate harm." *Faragher*, 524 U.S. at 806. Rather, under the functional approach established in *Ellerth/Faragher*, an employer must prove that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765(emphasis added).

Therefore, it is the employer's knowledge of the misconduct which is critical, not how the employer came to have that knowledge. *See Durkin v. City of Chi.*, 341 F.3d 606, 612 (7th Cir.2003); *Silk v. City of Chi.*, 194 F.3d 788, 807 (7th Cir.1999). The Seventh Circuit has held that in general, an employer is not held responsible for knowing about the harassment "unless the employee makes a concerted effort to inform the employer that a problem exists." *Silk,* 194 F.3d at 807 (internal quotation omitted) (*quoted in Rhodes,* 359 F.3d at 506-07 ). An employer has been held to have had constructive notice where the harassment is sufficiently obvious. *Mason v. Southern Ill. Univ.*, 233 F.3d 1036, 1046, n. 8 (7th Cir.2000); *Zimmerman v. Cook County Sheriff's Dept.*, 96 F.3d 1017, 1018 (7th Cir.1996). Notably, "the law against sexual harassment is not self-enforcing." *Perry,* 126 F.3d at 1014. Unless the employer has knowledge of harassing

9

conduct, "the law does not require an employer to do more than promote general anti-harassment policies and training to ensure compliance with Title VII." *Rhodes*, 359 F.3d at 507; *See Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 569 (7th Cir.2001).

To survive summary judgment plaintiff must establish that she was subjected to unwelcome harassment on the basis of her sex, the harassment was so severe or pervasive as to alter the conditions of her work environment, and there is some basis for employer liability. *See Williams v. Waste Mgmt. of Illinois*, 361 F.3d 1021, 1029 (7th Cir.2004). The relevant conduct must have been sufficiently severe so that the plaintiff subjectively found the conduct to be hostile and a reasonable person would also find it to be hostile. *See Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir.2000). The Court **FINDS** that Hilliard has established that Ozment's alleged conduct was sufficiently severe and pervasive enough to establish a prima facie case of hostile work environment sexual harassment. The relevant inquiry, then, is whether Hilliard adequately alerted her employer to the harassment, thereby satisfying her obligation to avoid the harm, not whether she followed the letter of the reporting procedures set out in the employer's harassment policy.

### A. Role of Corrections Officer Ozment

Harassment by a co-worker is treated differently from harassment by a supervisor. The first issue which arises, therefore, is whether Ozment was a supervisor of the plaintiff. If so, then the Court must determine if the plaintiff suffered a tangible employment action as a result of her supervisor's activities. In *Parkins*, the court defined the difference between a co-employee and supervisor. "It is manifest that the essence of a supervisory status is the authority to affect the terms and conditions of the victim's employment." 163 F.3d at 1032. "[M]erely having the

authority to oversee aspects of another employee's job performance does not qualify as a supervisor in the Title VII context." *Rhodes v. Illinois Dept. Of Nat. Resources*, 359 F.3d 498, 506 (7th Cir. 2004).

Harassment by a supervisor of the plaintiff triggers strict liability, subject to the possibility of an affirmative defense in the event the plaintiff suffered no tangible employment action. *See Parkins*, 163 F.3d at 1032; *But see, Faragher*, 524 U.S. at 807-08 (where the Court held that no affirmative defense is available to an employer in a sexual harassment case when the supervisor's harassment culminates in a tangible employment action such as discharge, demotion or undesirable reassignment).

Because plaintiff does not allege Ozment had the power to hire, fire, demote, promote, transfer, or discipline Hilliard, and the record is devoid of such evidence, the Court **FINDS** that Ozment was merely a co-employee of Hilliard's and not her supervisor.

### B. Tangible Employment Action or Defendant's Failure to Discover or Remedy the Harassment

Having determined that Ozment is not plaintiff's supervisor, the Court must next determine whether plaintiff has established that she suffered a tangible employment action. A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Faragher,* 524 U.S. at 761. Plaintiff does not claim that she suffered any negative change in employment status. Therefore, absent evidence of direct tangible employment action, to survive summary judgment, the plaintiff must show that the defendant was "negligent in discovering or remedying the harassment." *Durkin v. City of Chicago*, 341 F.3d 606, 612 (7th Cir. 2003). Vicarious liability would, therefore, be the only

remaining claim which plaintiff could assert against the IDOC because there is no evidence in the record that the harassment resulted in a change in status amounting to a tangible employment action. However, even if plaintiff can make such a showing, the defendant may be entitled to the affirmative defense established in *Ellerth* and *Faragher*. This defense is available if the defendant can show that "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 , 765 (1998); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

The plaintiff asserts that the defendant did not exercise reasonable care to prevent and promptly correct sexually harassing conduct. The defendant asserts that it took reasonable care to prevent and correct the action promptly. Although employers are not required to have perfect knowledge of their employees' activities, the issue is whether, once they had sufficient notice of the action, the employer took remedial action to correct the conduct. The plaintiff asserts that after she complained to superior officers, she was ignored. Plaintiff further asserts that although the defendant had policies it did not seriously train its investigators or supervisors on how to implement the policies.

The record reveals the following: Lt. Walker asserts in his affidavit that in May of 2000 the plaintiff told him that Ozment was following her home. (Ex. 50). After her initial complaints of Ozment's off-grounds behavior, Walker asked plaintiff if she wanted him to get involved; plaintiff declined, stating she did not want to get anyone in trouble. (Ex. 50). Plaintiff complained on June 11, 2000, to Lt. Walker and Captain Korando concerning Ozment's

behavior at work. (Ex. 48, p. 29; Ex. 9, p. 21). Korando asked plaintiff if she wanted to submit a written complaint regarding Ozment, but she declined. (Ex. 48, p. 29). Ozment and plaintiff worked primarily on different shifts from the summer of 2000 through the spring of 2001. (Aff. of Warden Alan Uctman, Ex. 13). In April of 2001, plaintiff alleges she was the target of unwelcome behavior from Ozment. (Ex. 48, p. 31). She complained to Lieutenant Walker, who instructed her to submit a written complaint. (Ex. 48, p. 31; Ex. 50). She submitted a written complaint of sexual harassment on April 2, 2001. (Ex. 51).[4] This was the first written complaint submitted by the plaintiff. Her allegations were immediately investigated by Tom Caraway of Menard's Internal Investigation Unit. His report of findings is dated April 17, 2001. (Ex. 52). Based on Mr. Caraway's findings, Ozment appeared before the employee review board on May 21, 2001, for a hearing on the charges that he violated the rules of Menard Correctional Center by harassing plaintiff. (Ex. 53). Ozment received a written reprimand for his actions. (*Id.*). Plaintiff does not allege any further sexual harassment by Ozment.[5]

"Title VII is designed to encourage the creation of antiharassment polices and effective grievance mechanisms." *Ellerth*, 524 U.S. at 764. However, a sexual harassment policy must provide for "effective grievance mechanisms" and therefore the mere creation of a sexual harassment policy will not shield a company from its responsibility to actively prevent sexual harassment in the workplace. The policy itself should provide for a process whereby an employee can express his or her concerns regarding an individual within a working environment.

---

[4]Plaintiff's written complaint states that Ozment never made harassing comments to Plaintiff in anyone else's presence. Therefore, defendant could only have been made aware of this activity through plaintiff's complaints.

[5]Plainitff does allege that Ozment later retaliated against her by calling her a "snitch" and/or a "bitch." Those allegations will be discussed more fully below.

Thus, the question then becomes whether the IDOC, with its sexual harassment policy in place, thereafter took reasonable care to prevent sexual harassment. *See, Shaw v. AutoZone, Inc.*, 180 F.3d 806, 812 (7th Cir.1999) ("[T]he law does not require success---it only requires that an employer act reasonably to prevent sexual harassment.").

The record reveals that there clearly was in place a process by which claims of sexual harassment were to be examined and investigated at IDOC. In addition, there was a sexual harassment policy, which was widely distributed to employees. The policy and the process were put into place once plaintiff made her written complaint on April 2, 2001. When reviewing whether an employer took reasonable steps to discover and correct acts of sexual harassment, the test courts will apply is one of reasonableness. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir. 1996).

Here, the actions taken by the defendant once it knew of the claim of harassment by plaintiff were, objectively, reasonable. Upon making her verbal complaints to Walker and Korando, plaintiff stated she did not want to submit a written complaint. It was reasonable for Walker and Korando to conclude, therefore, that plaintiff did not think she was the victim of sexual harassment. Once plaintiff chose to file a written report, the report was sent on to others in the Administration hierarchy, and there is no evidence of delay in that process or in the action that was taken. The complaint was thoroughly investigated, and resulted in discipline of Ozment. The plaintiff simply has not shown that the defendant was "negligent in discovering or remedying the harassment." *Durkin* 341 F.3d at 612.

Therefore, although plaintiff has established that she was subject to sexual harassment, the defendant is nonetheless entitled to summary judgment because the defendant has properly

14

asserted the *Ellerth* defense[6] and is, therefore not liable for Hilliard's claims of sexual harassment.

### 3. Plaintiff's Claim of Retalliation

Hilliard has also raised a claim of retaliation for filing her claim of harassment. Specifically, she claims that derogatory names were written on her personal drinking cup; threatening notes were left on her car and in her mailbox at work; and, that inmate tickets she wrote were misplaced—which she alleges encourages the inmates to engage in sexual misconduct around female guards without fear of consequences.

The Seventh Circuit noted in *Whitaker v. Northern Illinois Univ.* 424 F.3d 640, 648 (7th Cir. 2005), that the standards for "actionable adverse action for discrimination claims under § 2000e-2(a) and retaliation claims under § 2000e-3(a) are not identical." *Id.* at 647. "Section 2000e-3(a) is 'broader' than § 2000e-2(a) in the sense that retaliation may take so many forms, while § 2000e-2(a) is limited to discrimination 'with respect to [the worker's] compensation, terms, conditions, or privileges of employment.' *Id.* (*quoting Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, (7th Cir. 2005)).

To survive summary judgment, plaintiff must provide admissible evidence of retaliation under the direct or indirect methods of proof. *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir.2002). Plaintiff has no evidence under the direct method, which requires either an admission of retaliation or statements, or conduct from the decision-maker from which retaliation may be inferred. *See, Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000).

---

[6]The Court notes that this affirmative defense was raised in the answers filed in both 03-857 and 04-153, and were therefore preserved for summary judgment consideration.

To establish a claim of retaliation under the indirect method, a plaintiff must establish that "(1) after lodging a complaint about discrimination, (2) only [she], and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) [she] was performing [her] job in a satisfactory manner." *Stone* 281 F.3d at 642. Thereafter, the burden-shifting applies, requiring the defendant to provide a noninvidious reason for the adverse action; "[o]therwise there must be a trial." *Id*. at 644.

Therefore, plaintiff must show that she suffered an adverse employment action. "Typically, adverse employment actions are economic injuries." *Markel v. Board of Regents of Univ. of Wis. Sys*., 276 F.3d 906, 911 (7th Cir.2002). Of course, "adverse job action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well." *Smart v. Ball State Univ*., 89 F.3d 437, 441 (7th Cir.1996) (*quoting Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir.1987)). "[T]he adverse action must materially alter the terms and conditions of employment." *Stutler v. Ill. Dept. of Corr*., 263 F.3d 698, 703 (7th Cir.2001).

The terms and conditions of Hilliard's employment, arguably, were so altered. Although this is, in the Court's opinion, a thin claim, it nevertheless survives summary judgment. The plaintiff was allegedly subject to harassing activities by fellow employees once she filed her incident report. The Seventh Circuit has held that harassment from fellow workers and gossip can rise to the level of an adverse employment action. *Knox v. State of Indiana*, 93 F. 3d 1327, 1334-35 (7th Cir. 1996) (finding that permitting fellow employees to punish plaintiff for invoking her rights under Title VII, was actionable as retaliation).

Accordingly, the Court **GRANTS** in part and **DENIES** in part defendant's motion.

Summary judgment is **GRANTED** in favor of defendant, State of Illinois Department of Corrections, and against Diana Hilliard, on plaintiff's sexual harassment claim and **DENIED** on her retaliation claim.

**IT IS SO ORDERED.**

**DATED: June 21, 2006**

                                              **s/WILLIAM D. STIEHL**
                                                  DISTRICT JUDGE