# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KAYE MILLER-CRISLER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO. 03-CV-857-WDS |
| STATE OF ILLINOIS, ILLINOIS DEPARTMENT OF CORRECTIONS, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on defendant's motion for summary judgment on the claims of plaintiff Kaye Miller-Crisler (Doc. 52). Plaintiff has filed a response and defendant a reply to the motion. Plaintiff is one of twelve plaintiffs who have filed suit against the State of Illinois Department of Corrections for alleged discrimination on the basis of sex in the terms, conditions and privileges of employment and retaliation in violation of **Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.**[1]

The defendant seeks summary judgment on the grounds that plaintiff's claims of sexual harassment are time barred. In addition, the defendant asserts that plaintiff cannot demonstrate that she was subject to a hostile work environment and cannot establish a retaliation claim.

---

[1] This motion arises from two cases which are consolidated. The original action, 03-857, *Walker v. State of Illinois Department of Corrections*, sought recovery for discrimination based on sex and retaliation. The second, *Fletcher v. Department of Corrections*, 04-153, was filed on behalf of 12 plaintiffs, including plaintiff Walker from 03-857, and seeks recovery against IDOC for discrimination based on sexual harassment and retaliation.

1

## BACKGROUND

Plaintiff Miller-Crisler[2] was employed at Menard Correctional Center and asserts that she was subjected to sexual harassment from Captain Pickering beginning in 1999. In Count XII of the complaint (filed in cause no. 04-153), Miller-Crisler claims that Pickering would make crude, sexual comments to her; asked her for dates; and asked her to show him her breasts. Miller-Crisler asserts that although she attempted to avoid contact with Pickering, she was given assignments on a regular basis that required her to report directly to Pickering. She also alleges that he followed her while she was off-duty on several occasions.

She further claims that she was queried by Internal Investigations in May of 2001 as to whether she was possibly involved with or in support of other correctional officers who were filing charges with the EEOC; that she was asked if she continued to experience problems with Pickering; that it was stated to her that she should "do the right thing," which implied to her that she should drop her complaint or there would be consequences; that on May 24, 2001, she was threatened by other male officers that if she needed help while on the "gallery" that she would not receive help; that she was diagnosed on May 30, 2001, with suffering with severe situational stress and was advised to take two weeks off of work, but when she presented this medical verification to Captain Lloyd Korando, she was told to go to her work assignment and her request to be allowed to use alternate time after her sick leave was exhausted was denied; that she was retaliated against by Major Anthony Ramos who docked her paycheck and that of her husband, requiring them to engage in extended procedures to recover pay owed to them; that she

---

[2]Miller-Crisler was, at the time of the incidents involved, identified as Kaye Miller. She has since married another correctional officer, and is now identified in the pleadings as Miller-Crisler or Crisler.

and her husband were docked for time off when their daughter was in the Emergency Room in September of an unspecified year, despite the filing of absence slips by them; and that she has and continues to be ostracized by her co-workers as a result of filing the sexual harassment claims.

## REVIEW STANDARDS

### 1. Summary Judgment Standards

A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c):** *see also Celotex Corp. V. Catrett*, **477 U.S. 317, 322–23 (1986);** *Popovits v. Circuit City Stores, Inc.*, **185 F.3d 726, 731 (7th Cir. 1999).** The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See Lindemann v. Mobil Oil Corp.*, **141 F.3d 290, 294 (7th Cir. 1999) (citing** *Celotex***, 477 U.S. at 323)**. Once a motion for summary judgment has been made and properly supported, however, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986)**. In ruling on a motion for summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. *See Ritchie v. Glidden Co.*, **242 F.3d 713, 723 (7th Cir. 2001);** *Miranda v. Wisconsin Power & Light Co.*, **91 F.3d 1011, 1014 (7th Cir.**

3

**1996).**

  2.   **Filing of the EEOC Complaint**

The defendant asserts that plaintiff did not file her EEOC complaint in a timely manner and therefore cannot maintain this action. Initially, the defendant asserts that plaintiff did not file her complaint within 300 days of the complained-of action. Specifically, the defendant asserts that the claims of sexual harassment are unspecified in time, and that plaintiff only alleges that they occurred in 1990 and 2000. Her complaint was filed on June 4, 2001. In her Illinois Dept. of Human Rights complaint, Miller-Crisler states that two to three months before she filed the complaint, Pickering came to her on the gate and said, "We need to fuck," and that when they are in the same general vicinity (without any dates identified) that he stares at her chest.

In her response, plaintiff asserts that she is not complaining of single discrete acts that amount to sexual harassment in and of themselves, but is instead complaining of a series of acts and events that, taken in sum, constitute an continuing violation. Therefore, plaintiff argues, as long as any one incident which comprises the hostile environment falls within the applicable limitation period, she is entitled to relief for all the incidence she endured as an employee of the IDOC.

Title VII requires that a plaintiff in a deferral state, such as Illinois, file a charge of discrimination with the EEOC or an equivalent state agency within 300 days of an "alleged unlawful employment practice." **42 U.S.C. § 200e-5(e)(1); *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001).** Plaintiff filed her EEOC charge on June 4, 2001. (Ex. 49). Therefore, any claims regarding activities that occurred prior to July 31, 2000, would be time

barred under the general rule. Like most general rules, however, there is an exception. Activity occurring beyond the 300 day limitations period that is part of a pattern of discrimination can extend the limitations period. ***Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1003 (7th Cir. 1994)**. This pattern of activity is referred to as a "continuing violation." *Id*.

The Seventh Circuit recognizes three theories under which a plaintiff may establish a continuing violation. ***Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 120-21 (7th Cir. 1982); *Tinner v. United Insurance Co. of America*, 308 F.3d 697, 707 (7th Cir. 2002).** The first two theories do not apply to this action.[3]

Therefore, to survive summary judgment as to her allegations of harassment prior to August 4, 2000, Hilliard must be able to prove a continuing violation under the third theory, where individual acts are part of an ongoing pattern and at least one of the acts occurred within the applicable limitations period. ***Young v. Will County Dept. Of Pub. Aid*, 882 F.2d 290, 292 (7th Cir. 1989)**. Hostile environment claims often involve repeated conduct. And, therefore, the "unlawful employment practice" does not occur, necessarily, on any particular day. "It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." ***National R.R. Passenger Corp. V. Morgan*, 536 U.S. 101, 115 (2002)**.

A hostile work environment claim is composed of a series of

---

[3] The first situation occurs when an employer makes employment decisions over a range of time that make it difficult for the employee to determine the actual date of discrimination. *Tinner*, 308 F.3d at 707. Because Miller-Crisler is able to point to a few specific dates upon which she alleges she was harassed by specific people, the first situation does not apply to her case. The second situation arises when an employer follows an express discriminatory policy. *Id.* Miller-Crisler does not allege that the IDOC followed an express discriminatory policy in its actions; therefore, the second theory is also inapplicable.

> separate acts that collectively constitute one 'unlawful employment practice.' 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability.

*Id.* **at 117.**

The Court, therefore, **FINDS** that the acts complained of by plaintiff constitute a claim of hostile work environment. Since at least one of the acts complained of falls within the 300-day filing period, her petition is timely and the Court will consider the entire time period covered by plaintiff's allegations in determining liability. Defendant's motion for summary judgment is **DENIED** on the grounds that plaintiff's claims are time barred.

### 3. Sexual Harassment Standards

Title VII provides, "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race color, religion, sex, or national origin [.]" **42 U.S.C. § 2000e-2(a)(1).** Under Title VII, employers are prohibited from "requiring people to work in a discriminatorily hostile or abusive environment." ***Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21(1993); *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 701 (7th Cir.2001).**

To prevail on her hostile work environment claim, plaintiff must establish that:

> (1) she was subjected to unwelcome sexual advances, requests
> for sexual favors or other verbal or physical conduct of a
> sexual nature; (2) the conduct was severe or pervasive enough
> to create a hostile work environment; (3) the conduct was
> directed at her because of her sex; and (4) there is a basis for
> employer liability.

***Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004)**. To prove "hostile work environment," the alleged harassment must be "both subjectively and objectively so severe or pervasive as to alter the conditions of her employment and create an abusive working environment." ***Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir.2004).** "In determining whether the environment was objectively hostile, a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." ***Id.* at 975-76.** Notably, the threshold for plaintiff is high, as "[t]he workplace that is actionable is one that is 'hellish.'" ***Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir.1997).**

To evaluate whether a plaintiff's work environment was hostile, the Court must examine all of the circumstances surrounding the allegedly harassing activity, such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." ***Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)**; *see also* ***Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir.1993)**. These factors are evaluated, in accordance with *Harris,* from both an objective and a subjective viewpoint:

> Conduct that is not severe or pervasive enough to create an
> objectively hostile or abusive work environment--an
> environment that a reasonable person would find hostile or

> abusive--is beyond Title VII's purview. Likewise, if the victim
> does not subjectively perceive the environment to be abusive,
> the conduct has not actually altered the conditions of the
> victim's employment, and there is not a Title VII violation.

*Harris*, **510 U.S. at 21-22.** The Seventh Circuit has repeatedly held that "isolated and innocuous incidents do not support a finding of sexual harassment." *See, e.g., Koelsch v. Beltone Electronics Corp.*, **46 F.3d 705, 708 (7th Cir.1995);** *Doe v. R.R. Donnelley & Sons Co.*, **42 F.3d 439, 444 (7th Cir.1994).**

### 4. Employer Liability

An employer's liability for sexual harassment "hinges on whether the harasser is the victim's supervisor or merely a co-employee." *Hall v. Bodine Elec. Co.*, **276 F.3d 345, 355 (7th Cir.2002).** The Seventh Circuit has defined a supervisor as one with the "power to hire, fire, demote, promote, transfer, or discipline an employee." *Parkins v. Civil Constructors of Ill.*, **Inc., 163 F.3d 1027, 1034 (7th Cir.1998).**

Therefore, even if the actions alleged support sexual harassment, for there to be employer liability, plaintiff must show that she suffered tangible employment action. Without this showing, the defendant is entitled to establish an affirmative defense consisting of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, **524 U.S. 742 , 765 (1998);** *see also Faragher v. City of Boca Raton*, **524 U.S. 775, 807 (1998).**

Employers are liable for a coworker's harassment only "when they have been negligent either in discovering or remedying the harassment." *Perry,* **126 F.3d at 1013.** An employer

satisfies its legal duty in coworker harassment cases "if it takes reasonable steps to discover and rectify acts of ... harassment of its employees." ***Parkins*, 163 F.3d at 1032 (internal quotation marks omitted)**.

In *Ellerth* and *Faragher*, the Supreme Court stated that "while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." ***Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807-08.** The Court made clear that compliance with an employer's designated complaint procedure is not the sole means by which an employee can fulfill her "coordinate duty to avoid or mitigate harm." ***Faragher*, 524 U.S. at 806.** Rather, under the functional approach established in *Ellerth/Faragher*, an employer must prove that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." ***Ellerth*, 524 U.S. at 765(emphasis added)**.

Therefore, it is the employer's knowledge of the misconduct which is critical, not how the employer came to have that knowledge. ***See Durkin v. City of Chi.*, 341 F.3d 606, 612 (7th Cir.2003); *Silk v. City of Chi.*, 194 F.3d 788, 807 (7th Cir.1999).** The Seventh Circuit has held that in general, an employer is not held responsible for knowing about the harassment "unless the employee makes a concerted effort to inform the employer that a problem exists." ***Silk*, 194 F.3d at 807 (internal quotation omitted) (*quoted in Rhodes*, 359 F.3d at 506-07 ).** An employer has been held to have had constructive notice where the harassment is sufficiently obvious. ***Mason v. Southern Ill. Univ.*, 233 F.3d 1036, 1046, n. 8 (7th Cir.2000); *Zimmerman v. Cook County***

*Sheriff's Dept.*, **96 F.3d 1017, 1018 (7th Cir.1996).** Notably, "the law against sexual harassment is not self-enforcing." *Perry*, **126 F.3d at 1014.** Unless the employer has knowledge of harassing conduct, "the law does not require an employer to do more than promote general anti-harassment policies and training to ensure compliance with Title VII." *Rhodes*, **359 F.3d at 507;** *See Cooke v. Stefani Mgmt. Servs., Inc.*, **250 F.3d 564, 569 (7th Cir.2001)**.

The Court **FINDS** that Miller-Crisler has established that Pickering's alleged conduct was sufficiently severe and pervasive to establish a prima facie case of hostile work environment sexual harassment. The relevant inquiry, then, is whether Miller-Crisler adequately alerted her employer to the harassment, thereby satisfying her obligation to avoid the harm, not whether she followed the letter of the reporting procedures set out in the employer's harassment policy. To survive summary judgment plaintiff must establish that she was subjected to unwelcome harassment on the basis of her sex, the harassment was so severe or pervasive as to alter the conditions of her work environment, and there is some basis for employer liability. *See Williams v. Waste Mgmt. of Illinois*, **361 F.3d 1021, 1029 (7th Cir.2004).** The relevant conduct must have been sufficiently severe so that the plaintiff subjectively found the conduct to be hostile and a reasonable person would also find it to be hostile. *See Hostetler v. Quality Dining, Inc.*, **218 F.3d 798, 807 (7th Cir.2000)**.

## ANALYSIS

### A.     PLAINTIFF'S CLAIMS OF SEXUAL HARASSMENT

#### 1.     Did Plaintiff Adequately Notify IDOC of Her Complaint of Sexual Harassment?

The defendant asserts that plaintiff cannot establish that she suffered a tangible employment action as a result of sexual harassment because she did not file a written report or

10

complaint of sexual harassment or directly report the harassment to the Office of Affirmative Action.  The plaintiff alleges that she orally reported the harassment to her co-workers and superiors but that nothing was done.   The defendant asserts that once it had any knowledge of the sexual harassment allegations of the plaintiff, that is, when she filed her Charge of Discrimination, it immediately launched an investigation into her allegations of harassment, including her claims of oral reports being filed by plaintiff.  The defendant determined, after its investigation, that her claims could not be substantiated, and that absent written verification of a complaint, there is nothing to support her claim that the IDOC had knowledge of the actions.  Plaintiff asserts that the IDOC had a duty to take prompt remedial measures once it was apprised of the harassment.

Generally, the Seventh Circuit holds that an employer has not been adequately apprised of the harassment "unless the employee makes a concerted effort to inform the employer that a problem exists." ***Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir.1999)** (internal quotation omitted). However, the Court will charge an employer with constructive notice where the harassment is sufficiently obvious. ***Mason v. Southern Ill. Univ.*, 233 F.3d 1036, 1046, n. 8 (7th Cir.2000); *Zimmerman v. Cook County Sheriff's Dept.*, 96 F.3d 1017, 1018 (7th Cir.1996).** However, it is also settled that "the law against sexual harassment is not self-enforcing." ***Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1014 (7th Cir.1997).** Without employer knowledge of harassing conduct, the law does not require an employer to do more than promote general anti-harassment policies and training to ensure compliance with Title VII. ***See Cooke* 250 F.3d at 569.**

> **2.**	**Tangible Employment Action or Defendant's Failure to Discover or Remedy the Harassment**

A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Faragher,* **524 U.S. at 761.** Plaintiff failed to present any evidence of direct tangible employment action, therefore, to survive summary judgment, the plaintiff must show that the defendant was "negligent in discovering or remedying the harassment." *Durkin v. City of Chicago*, **341 F.3d 606, 612 (7th Cir. 2003).** However, even if plaintiff can make such a showing, the defendant may be entitled to the affirmative defense established in *Ellerth* and *Faragher.* This defense is available if the defendant can show that "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, **524 U.S. 742 , 765 (1998);** *see also Faragher v. City of Boca Raton*, **524 U.S. 775, 807 (1998).** When a supervisor is the harasser, the employer is strictly liable for his or her conduct, subject to any affirmative defenses that may preclude its liability. *Parkins*, **163 F.3d at 1032**.

**B.     DID DEFENDANT TAKE REASONABLE CARE TO PREVENT AND CORRECT HARASSING BEHAVIOR?**

The plaintiff asserts that the defendant did not exercise reasonable care to prevent and promptly correct the sexually harassing conduct, and that once notified, it took reasonable care to correct the action. Although employers are not required to have perfect knowledge of their employees' activities, the issue is whether once they had sufficient notice of the action the employer took remedial action to correct the conduct. The plaintiff asserts a general "duty" to

12

discover and respond to any evidence of sexual harassment by IDOC, and makes general assertions that IDOC, when it received complaints, ignored them.

The record however, reveals that once plaintiff filed her Charge of Discrimination, an immediate investigation was begun. The defendant asserts that had plaintiff taken advantage of the complaint procedure, it would have had the opportunity to act to take corrective measures. Plaintiff counters that she did not file a complaint because she was afraid of being ostracized.

"Title VII is designed to encourage the creation of antiharassment polices and effective grievance mechanisms." ***Ellerth*, 524 U.S. at 764.** However, a sexual harassment policy must provide for "effective grievance mechanisms" and therefore the mere creation of a sexual harassment policy will not shield a company from its responsibility to actively prevent sexual harassment in the workplace. The policy itself should provide for a process whereby an employee can express his or her concerns regarding an individual within a working environment. Thus, the question then becomes whether the IDOC, with its sexual harassment policy in place, the preventative part of the test, thereafter took reasonable care to prevent sexual harassment. ***See, Shaw v. AutoZone, Inc.*, 180 F.3d 806, 812 (7th Cir.1999)** (" [T]he law does not require success--it only requires that an employer act reasonably to prevent sexual harassment."). The record reveals that there clearly was in place a process by which claims of sexual harassment were to be examined and investigated at IDOC. In addition, there was a sexual harassment policy, which was widely distributed to employees.

When reviewing whether an employer took reasonable steps to discover and correct acts of sexual harassment, the test courts will apply is one of reasonableness. ***Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir. 1996)**. Here, the actions taken by the defendant once it

knew of the claim of harassment by plaintiff, were objectively reasonable. As soon as plaintiff filed her Charge of Discrimination, the investigation was begun, and there is no evidence of delay in that process or in the action that was taken.

Therefore, although plaintiff has established that she was subject to sexual harassment, the defendant is nonetheless entitled to summary judgment because the defendant has properly asserted the *Ellerth* defense[4] and is, therefore not strictly liable for Miller-Crisler on her claims of sexual harassment.

### C. PLAINTIFF'S CLAIM OF RETALIATION

Miller-Crisler has also raised a claim of retaliation for filing her claim of harassment. Specifically, she claims that on occasions she felt isolated by her co-workers; that she was transferred to 2 North Segregation and was told that she would not be helped if she were to experience trouble; that she was denied leave to attend her step-brother's funeral; that her pay was docked by Major Ramos, which required her to go through "extended procedures" to recover her pay; that she was not allowed to use FMLA leave for her own illness; that she was disciplined for violating the Affirmative Attendance policy; and she was denied leave to use alternative time to cover her requested time-off for medical leave

The Seventh Circuit noted in ***Whitaker v. Northern Illinois Univ.* 424 F.3d 640, 648 (7th Cir. 2005),** that the standards for "actionable adverse action for discrimination claims under **§ 2000e-2(a)** and retaliation claims under **§ 2000e-3(a)** are not identical." ***Id.* at 647**. "Section 2000e-3(a) is 'broader' than § 2000e-2(a) in the sense that retaliation may take so many forms, while § 2000e-2(a) is limited to discrimination 'with respect to [the worker's] compensation,

---

[4]The Court notes that this affirmative defense was raised in the answers filed in both 03-857 and 04-153, and were therefore preserved for summary judgment consideration.

terms, conditions, or privileges of employment.'" *Id.* (*quoting Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, (7th Cir. 2005)).

To survive summary judgment, Miller-Crisler must provide admissible evidence of retaliation under the direct or indirect methods of proof. *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir.2002). Plaintiff has no evidence under the direct method, which requires either an admission of retaliation or statements or conduct from the decision-maker from which retaliation may be inferred. *See, Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir.2000).

To establish a claim of retaliation under the indirect method, a plaintiff must establish that "(1) after lodging a complaint about discrimination, (2) only [she], and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) [she] was performing [her] job in a satisfactory manner." *Stone* 281 F.3d at 642. Thereafter, the burden-shifting applies, requiring the defendant to provide a noninvidious reason for the adverse action; "[o]therwise there must be a trial." *Id.* at 644.

Therefore Miller-Crisler must show that she suffered an adverse employment action. "Typically, adverse employment actions are economic injuries." *Markel v. Board of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir.2002). Of course, "adverse job action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996) (*quoting Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir.1987)). "[T]he adverse action must materially alter the terms and conditions of employment." *Stutler v. Ill. Dept. of Corr.*, 263 F.3d 698, 703 (7th Cir.2001).

The defendant asserts that Miller-Crisler cannot show that she suffered a materially adverse employment action. The terms and conditions of Miller-Crisler's employment, were, however, arguably so altered. Although this is, in the Court's opinion, a thin claim, it nevertheless survives summary judgment. The plaintiff was allegedly subject to harassing activities by fellow employees. The Seventh Circuit has held that harassment from fellow workers and gossip can rise to the level of an adverse employment action. ***Knox v. State of Indiana*, 93 F. 3d 1327, 1334-35 (7th Cir. 1996**) (finding that permitting fellow employees to punish plaintiff for invoking her rights under Title VII, was actionable as retaliation). The defendant asserts that plaintiff did not lose money "permanently" by virtue of the delayed approval of her timely Family and Medical Leave requests, the fact that her requests resulted in docked pay, even if eventually remedied, could rise to the level of retaliation.

Therefore, the Court **FINDS** that plaintiff has raised a sufficient question of fact with respect to the issue of retaliation to survive summary judgment on this claim.

Accordingly, the Court **GRANTS** in part and **DENIES** in part defendant's motion. Summary judgment is **GRANTED** in favor of defendant, State of Illinois Department of Corrections, and against plaintiff Kaye Miller-Crisler, on her claim of sexual harassment claim and **DENIED** on her retaliation claim.

**IT IS SO ORDERED.**

**DATED: June 22, 2006.**

<u>s/ WILLIAM D. STIEHL</u>
**DISTRICT JUDGE**