# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| ANGELA FLETCHER, et al., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 03-CV-857-WDS |
|  | ) |  |
| STATE OF ILLINOIS, ILLINOIS | ) |  |
| DEPARTMENT OF CORRECTIONS, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is a motion to reconsider filed by plaintiffs Lora Walker, Michelle Groves, Diana Hankins, Wendy Holton, Vickie Howie, Rachel Nutter, Robin Rowold and Jennifer Wingerter (Doc. 93), to which defendant has filed a response (Doc. 94), and plaintiffs a reply (Doc. 95). The motion to reconsider primarily asks the Court to review that part of its orders of summary judgment (Docs. 88, 89) which granted summary judgment on these plaintiff's claims of retaliation in light of the recent decision of the Supreme Court in *Burlington, N. & Santa Fe Ry. Co. v. White,* 126 S. Ct. 2405 (2006). In addition, the motion asks the Court to reconsider that part of its orders which granted summary judgment on plaintiffs' sexual harassment claims.

## STANDARD OF REVIEW

A motion for reconsideration "allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996). A motion for reconsideration, however, is not an opportunity for a party to correct its own procedural failures or introduce evidence that should have been brought

to the attention of the court prior to judgment. See, *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 439 (7th Cir. 1999); see, also *Calumet Lumber, Inc. v. Mid-America Indus., Inc.*, 1996 WL 308243, at *1 (N.D. Ill. June 5, 1996).

**I.      MOTION TO RECONSIDER RETALIATION CLAIMS**

**A.      Retaliation Claims after *Burlington, N. & Santa Fe Ry. Co. v. White***

In its June 22, 2006 ruling[1] the Supreme Court reviewed the issue of retaliation and held that to be actionable, retaliation "need not take the form of an adverse employment action." *Nair v. Nicholson*, 464 F.3d 766, 768 (7th Cir. 2006) (*quoting White*, 126 S. Ct at 2409).   The Supreme Court noted, however, that "petty slights or minor annoyances" will not amount to retaliation. 126 S. Ct. at 2415.   As the *Nair* court stated, "The test is whether the conduct alleged as retaliation would be likely to deter a reasonable employee from complaining about discrimination."  464 F.3d at 768-69 (*citing White*, 126 S. Ct. at 2415-16).   Further "the *motive* must be to retaliate for activity protected by Title VII." 464 F.3d at 769 (emphasis supplied). The Supreme Court noted that "The anti-retaliation provision protects an individual not from all retaliation, *but from retaliation that produces an injury or harm.*" 126 S. Ct. at 2414 (emphasis added).  In further explanation, the Court stated that a plaintiff claiming retaliation must show that "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" 126 S. Ct. 2415 (quoting *Rochon v. Gonzalez,* 438 F.3d 1211, 1219 (D.C. Cir. 2006) (*quoting Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005)).

---

[1]The Supreme Court opinion was issued the day before this Court's orders on the defendant's summary judgment motions.

The Court further stated that the review is based on a reasonable employee "because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." 126 S. Ct. at 2415. Further "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale v. Sundowner Offshore Serv. Inc.,* 523 U.S. 75, (1998) *quoted in White*, 126 S. Ct. at 2415. The Court differentiated between a supervisor refusing to invite an employee to lunch, finding that "trivial," with "excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement [and] might well deter a reasonable employee from complaining about discrimination." 126 S. Ct. at 2415-16.

The Court further stated that:

> By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination.

*Id.* at 2416. The Court noted that "reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case" and is judged under the reasonable person standard. *Id.* at 2417.

### B. Defendant's Response to Plaintiffs' Motion

Defendant objects to the motion to reconsider on the grounds that plaintiffs have

3

attempted to bring in new claims and new evidence to support those claims. Clearly a motion to reconsider is not the time to bring in new evidence or claims that were not presented to the Court at the time it ruled on the summary judgment motion. See, *Johnny Blastoff,* 188 F.3d at 439. Moreover, defendant asserts that the Court's decision to grant summary judgment was correct because the plaintiffs have failed to show that they were retaliated against.[2] In the briefing on the motion for summary judgment, defendant noted that only three plaintiffs had made retaliation arguments, and the plaintiffs did not counter this. Plaintiffs now assert, however, that they each made retaliation claims at the EEOC level, in addition to their claims of sexual harassment, and that given the change in the Supreme Court standards for retaliation, they should be able to rely on any evidence that is in the record in support of their retaliation claim under this new standard of review. Clearly, the Supreme Court decision in *White* represents a change in the way courts are to review retaliation claims. Plaintiffs now assert that evidence that was presented in support of their prior, now dismissed claims of discrimination, support a retaliation claim under *White*. Given that *White* established a new basis for reviewing these claims, the Court will liberally review the evidence previously presented to determine if there is any basis for a claim of retaliation as to each plaintiff that should survive summary judgment review.

### C. Methods of Establishing Retaliation

The statue forbids an employer "to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or

---

[2]Defendant points to several of the plaintiffs' depositions which establish that there was not retaliation. Plaintiff Wingerter testified that she was not alleging retaliation. (Ex. 6, p. 21-22). Plaintiff Groves admitted that she could not prove any retaliation (Ex. 11, p. 24).

4

participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "A person who complains about discrimination cannot be expected to have anything more than an honest and reasonable belief that there has been a violation of law; and no more is required to support her retaliation claim." *Nair*, 464 F.3d at 769.

It is now settled that retaliation can be established under either the direct or indirect method of proof. "Under the direct approach, a plaintiff must present evidence of: (1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." *Burks v. Wis. Dep't of Transp.,* 464 F.3d 744, 758 (7th Cir. 2006) (*citing White*, 126 S.Ct. at 2413). To establish retaliation by the indirect method, plaintiff must "offer evidence of the following: (1) that she engaged in protected activity; (2) that she was subject to an adverse employment action; (3) that she was performing her job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action." 464 F.3d at 759.

"[T]he direct method does not utilize the specific circumstantial evidence that the plaintiff presents when [she] uses the indirect method of establishing discrimination." *Sylvester v. SOS Children's Villages Ill., Inc.,* 453 F.3d 900, 902 (7th Cir. 2006). "But if [she] can prove by means of circumstantial evidence 'that [she] engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which [she] complains,' that is fine [to establish direct proof] as most of our cases. . . properly assume." *Id.* Therefore, in the Seventh Circuit, the direct method may use circumstantial evidence as part of the "convincing mosaic" of evidence used to establish a prima facie case. *Id.* at 903. As the *Sylvester* court stated:

> A case of discrimination can. . .be made by assembling a number of pieces of evidence none meaningful in itself, consistent with the proposition of statistical theory that a number of observations each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction: "a number of weak points can add up to strong proof." *Mataya v. Kingston*, 371 F.3d 353, 358 (7th Cir. 2004).

435 F.3d at 903. This does not mean, however, that "petty slights or minor annoyances" will be enough to establish retaliation, *White*, 126 S. Ct. at 2415, nor that timing, alone, will provide sufficient circumstantial evidence to amount to direct evidence. *Burks*, 464 F.3d at 758-59. "Speculation based on suspicious timing alone. . .does not support a reasonable inference of retaliation." *Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918 (7th Cir. 2000) (*quoted in Burks*, 464 F.3d at 758). Further "'[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second'; the plaintiff also must put forth other evidence that reasonably suggests that her protected . . .activities were related to her employer's discrimination. . . . ." *Burks*, 464 F.3d at 758-59, *quoting Sauzek*, 202 F.3d at 918.

If a plaintiff cannot establish retaliation under the direct method, she may proceed under the indirect method. As stated above, the four elements of indirect proof are "(1) that she engaged in protected activity; (2) that she was subject to an adverse employment action; (3) that she was performing her job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action." *Burks,* 464 F.3d at 759. The fourth element requires a plaintiff to show that "some comparable employee received better treatment" than the plaintiff received. *Yindee v. CCH Inc.,* 458 F.3d 599, 602 (7th Cir. 2006). Therefore, proof must included evidence of favorable treatment given to "similarly situated individuals who did not engage in protected . . . activity." *Burks*, 464 F.3d at 759.

6

### 1. Review of Each Plaintiff's Claims of Retaliation

#### a. Wingerter:

In the plaintiffs' briefs seeking reconsideration, plaintiff Wingerter does not make a specific claim for this Court to review its prior ruling on retaliation, but seem to include Wingerter in a general "all plaintiffs" category. In light of this and Wingerter's testimony in the record that she was not alleging retaliation (Ex. 6, p. 21-22), the Court will not review the record as to her claims and the prior order on summary judgment as to this plaintiff remains unaffected by this review and Order.

#### b. Groves

As noted above, Groves previously admitted that she could not prove any retaliation (Ex. 11, p. 24). Despite this, Groves now asserts that the record provides evidence of retaliation in that she was refused training opportunities and job transfer. Specifically, Groves asserts that after she filed her EEOC complaint, for two day when she was scheduled for "cross training" she was transferred to other areas of the prison. While on assignment in Captain Pickering's area she claims that he was upset with her for complaining about Oakley, that Pickering did not want her there and transferred her out of his area back to Captain Inman, who then transferred her to East 2 Gallery. She further claims that once at East 2 Gallery, Lt. Hampsey did not want her there, so transferred her to the door. ( Doc. 62, Ex. 11 pp. 25-26) In her deposition Groves states "Yes I believe I was retaliated against, but can I prove that? No." (*Id.* at p. 24).

Clearly, filing an EEOC complaint about sexual harassment and retaliation would be a protected activity, and would satisfy the first prong of the direct evidence test. *Burks,* 464 F.3d at 758. Groves asserts that the transfers somehow amounted to an adverse action, although that

claim is left undeveloped. It is hard to see how these transfers were more than "petty slights or minor annoyances" which would not be actionable under *White*, 126 S.Ct. at 2415. As the Court has noted above, suspicious timing, without more to support it will not support a retaliation claim. "'[T]he mere fact that one event preceded another does nothing to prove that the first event caused the second'; the plaintiff also must put forth other evidence that reasonably suggests that her protected . . . activities were related to her employer's discrimination . . . ." *Burks*, 464 F.3d at 758-59, *quoting Sauzek*, 202 F.3d at 918.

Under the direct method Groves has not established the second prong, even considering her assertion that as a result of the assignment transfers over that two day period she missed training. As the *White* Court stated "reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case" and judged under the reasonable person standard. 126 S. Ct. at 2417. Given the undeveloped record, the Court **FINDS** that the record does not show, nor has Groves now argued, how this missed training adversely affected her employment, how missing training might have otherwise amounted to an adverse action, or that she was unable to be trained at another time. *Cf. White*, 126 S. Ct. at 2415-16.

However, even if missing the training and being transferred were enough to establish an adverse action, thus meeting the second prong of the direct evidence test, Groves has not established a causal link, the third prong of the direct evidence test. The Seventh Circuit has held that: "Speculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation." *Sauzek* F.3d at 918( *quoted in Burks,* 464 F.3d at 758). All Groves has put forward is speculation that these transfers were based on her filing of the EEOC complaint

and she admits in her deposition that she has no direct evidence. (Ex. 11 p. 24). Therefore, the Court will consider whether she can establish retaliation under the indirect method.

Applying the four elements from *Burks* "(1) that she engaged in protected activity; (2) that she was subject to an adverse employment action; (3) that she was performing her job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action, " 464 F.3d at 759, the Court is persuaded that she has met the first prong of the indirect method test. However, the adverse employment action remains unclear in this record. As the Court noted above, "The test is whether the conduct alleged as retaliation would be likely to deter a reasonable employee from complaining about discrimination." *Nair*, 464 F.3d at 768-69 (*citing White*, 126 S.Ct. at 2415-16). Further "the *motive* must be to retaliate for activity protected by Title VII." *Id.* at 769 (emphasis supplied). Here, the allegations by Groves are that she was transferred, and she believed those transfers were because Inman, Pickering and Hempsey did not want her working in their areas.

Although Groves may have presented sufficient evidence under *White* from which a reasonable jury could infer a relationship between those actions and her report of sexual harassment, i.e. that within a short time after her complaints, a series of unwarranted actions and disparate treatments began, she simply has not established that this treatment did not occur to others who had not complained. Without this element of the indirect method of establishing retaliation, plaintiff Groves cannot survive summary judgment on this claim. Moreover, Groves has not offered evidence of the fourth prong of the test, that similarly situated individuals who did not engage in filing EEOC complaints were treated more favorably. Therefore, even under the new review standard of *White,* Groves has not established that she suffered from retaliation

9

as a result of filing her EEOC claim.

### c. Hankins

In her part of the motion to reconsider, plaintiff Hankins asserts that she suffered from retaliatory transfer and job assignment and points to fellow worker harassment and gossip as evidence of retaliation. She alleges that after she complained about harassment internally, she then complained to the Director of DOC about the treatment she was receiving from her fellow employees. Hankins alleges that her co-plaintiff, Fletcher, allegedly heard Pickering tell male employees that he would see Hankins kicked out of 2 North for going over his head to the Director. Hankins alleges that she was moved to the 16 Box Gate, which was an outdoor shack that was cold. She requested a heater, which she received, but it was later stolen. She also asked for a chair, but, instead, they brought her milk crates. She asserts that although she was supposed to have protection from the tower while she was at the gate, no protection was provided. She complained about this to Lt. Hines who allegedly replied that they knew about that, and to Major Buchheit who indicated that they could not do anything about it.

She also alleges that she was subjected to name calling by other officers, that she was not taken seriously by the DOC Investigator, and that other employees would not talk to her while she was assigned to 2 North Segregation Unit. She also complains that when she was required to transport prisoners she was not provided with additional staffing as required.

Under these facts, Hankins has not established retaliation by the direct method of proof. At best, her evidence would be speculative, and as discussed above, that does not, alone, support the direct method of proof. *Sauzek,* 202 F.3d at 918 ("Speculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation.") Given the *White* standard,

the Court **FINDS** that Hankins claims with respect to her transfer do not amount to adverse action. As discussed in the Court's prior order, the record reveals that she had specifically requested positions that met her desired schedule of days off and shift times. Given this, her evidence of transfers does not amount to retaliatory actions.

Even if this evidence were sufficient to establish adverse employment action, Hankins cannot establish retaliation under the indirect method because she has failed to present any evidence (either in the motion to reconsider or in her prior brief in opposition to the defendant's motion for summary judgment) of favorable treatment given to "similarly situated individuals who did not engage in protected . . . activity." *Burks*, 464 F.3d at 759. Therefore, the Court **FINDS** that Hankins has not established retaliation under either the direct or indirect methods of proof.

#### d. Holton

Holton alleges that male officers talked about her as if she were "a piece of trash"; that after she complained about Lt. Oakley she was not allowed to take certain classes that were offered, and that she was referred to as the "company whore" by other people on staff. The Seventh Circuit has held that people spread rumors "for any number of reasons having nothing to do with gender discrimination." *Pasqua v. Metro. Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir. 1996) and this seems just as applicable to retaliation claims. Simply put, Holton's co-workers' conduct alleged here, gossiping and name calling, do not appear to be sufficiently severe, or linked to her actions in filing a compliant, to rise to the level of retaliation.

Moreover, the record is void of any evidence of favorable treatment given to "similarly situated individuals who did not engage in protected . . . activity." *Burks*, 464 F.3d at 759.

11

Therefore, the Court **FINDS** that Holton has not established retaliation under either the direct or indirect methods of proof.

### e. Howie

Howie assets that she was treated "differently" after she filed her EEOC complaint. She claims that people did not want to talk to her because they were afraid of being written up, and that she was called "snitch" and that people were warned to "stay away" from her.

The Court **FINDS** that these claims are too remote, and too trivial, even under the broader *White* standard, to amount to retaliation. 126 S. Ct. at 2416. Accordingly, the Court will not allow Howie's retaliation claims to proceed.

### f. Nutter

Nutter asserts that she was referred to by male officers as "slut" and "whore." As addressed above, this type of name calling is more trivial, and would not, under the facts of this case, give rise to a retaliation claims. *See Pasqua*, 101 F.3d at 517. Nutter also claims that the information she provided to the affirmative action officer investigating the claims of harassment were not kept confidential. However, her claim is that Oakley somehow found out about who had complained about him and went to plaintiff Holton, notably, not to plaintiff Nutter, and asked Holton to change her story. He allegedly also told Holton that he knew where the women who had complained about him lived. Nutter also asserts that after Oakley was disciplined by being locked out of the facility, he was still given access to the areas where the women, including Nutter, worked, and that he threatened her and Holton, causing Nutter to pass out. Although the actions of Oakely were enough to warrant his discipline and dismissal, it is hard for the Court to find that these actions by Oakely amounted to any actions that would give rise to a

12

claim of retaliation by the defendant. "[A]n employer is liable for harassment by coworkers, whether discriminatory or retaliatory, only if it negligently fails to take proper preventive or corrective measures." *Nair*, 464 F.3d at 769. There simply is no evidence of that in this case.

Nutter further complains that she was reassigned from the electric eye position at the entrance to the prison without an explanation after filing her complaint. She further claims that she was denied choice assignments and was also denied benefits while she was off work. The record reveals that Nutter acknowledged that other employees who had not filed complaints with the EEOC were transferred from the electric eye position, and that her transfer occurred more than a year after she filed her complaint. (Doc. 53, ex. 6 pp. 38-39).

Therefore, reviewing the record as to plaintiff Nutter, the Court **FINDS** that she has not presented sufficient evidence, even under the *White* standard to make a retaliation claim under the direct or indirect methods and the Court's prior ruling as to Nutter will stand.

### g. Rowold

Plaintiff Rowold asserts that she asked to be transferred out of 1 North because other workers told her that they did not want to work with her and that she felt isolated and was treated in a cold manner. "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." 126 S. Ct. at 2414. Although the plaintiff felt shunned by her fellow workers, this does not rise to the level of retaliation that would be actionable against the defendant. It is understandable in a work environment that employees may be, at times, isolated from their co-employees. Notably, the record does not reveal that Rowold felt as if she were, somehow, by the actions of her co-workers, dissuaded "from making or supporting a charge of discrimination."126 S. Ct. 2415, nor is there anything in the record to

reveal that any other potential plaintiff would have been so dissuaded. To hold that the defendant is liable for retaliation under these circumstances would, in essence, be a holding that an employer must make employees trust or accept other employees. That would be a requirement that would be nearly impossible to achieve. Employers can do a lot to prevent inappropriate behavior and actions, but to force this type of behavior is beyond the provisions of even *White*.

### h. Walker

Finally, plaintiff Walker asserts multiple grounds for the Court to reconsider her claims of retaliation. The Court issued a separate order (Doc. 89) as to Walker, finding that she had not established her prima facie case for discrimination, and had not, based in part on the record and the motion, established retaliation under the indirect method of proof.[3] Walker alleges, inter alia, that the evidence that she was shunned; called names by co-workers and supervisors; subjected to gossip and harassment; pointed at in the lunch room; transferred and given job assignments that were less desirable and usually given to women rather than to men; subjected to retaliatory discipline; was denied a job with Internal Affairs; received poor job evaluations; and was harassed by supervisors.

As previously discussed, Walker did not present evidence to establish retaliation by the direct method of proof, and the Court found that she did not establish retaliation by the indirect method because she did not establish an adverse employment action. Under *White,* even if Walker might be able to show an adverse action, she has not met the fourth part of the indirect method test, "that no similarly situated employee who did not engage in protected activity suffered an adverse employment action." *Burks,* 464 F.3d at 759. Absent this showing, her

---

[3] The Court found that she had not offered direct evidence of retaliation.

14

claim of retaliation must fail.

Therefore, reviewing the record under the *White* standard, and recent Seventh Circuit cases applying *White*, the Court **FINDS** that the plaintiffs Lora Walker, Michelle Groves, Diana Hankins, Wendy Holton, Vickie Howie, Rachel Nutter, Robin Rowold and Jennifer Wingerter have not established retaliation under either the direct or indirect methods of proof, and **DENIES** the motion to reconsider as to the retaliation claims.

## II. PLAINTIFFS' MOTION TO RECONSIDER RULINGS ON THEIR CLAIMS OF SEXUAL HARASSMENT AND DISCRIMINATION

Plaintiffs seek to have this Court reconsider its determinations that the defendant was entitled to summary judgment on plaintiffs' claims of discrimination based on sexual harassment citing a July 27, 2006, decision of the Seventh Circuit, *Valentine v. City of Chi.*, 452 F.3d 670 (7th Cir. 2006). The Court previously found that Walker had failed to establish that she was performing at her employer's legitimate expectations, or that she suffered adverse employment action. (See Doc. 89 pp. 6-7.) With respect to plaintiffs Groves, Hankins, Howie, Nutter, Rowold and Wingerter, the Court found even if they had established claims of sexual harassment that the defendant was entitled to the *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998), defense and therefore granted summary judgment in favor of the defendant on the sexual harassment claims of Groves, Hankins, Howie, Nutter, Rowold and Wingerter.

With respect to plaintiff Holton, the Court previously found that the defendant was entitled to judgment on the grounds that her harasser, Bush, was not a supervisor and further, that the plaintiff had not established that IDOC was negligent in failing to discover or remedy the harassment. (Doc. 88 pp. 11-12.)

Reviewing the record, the Court **FINDS** that it fully considered the plaintiffs' individual claims of sexual harassment, and properly granted judgment in favor of the defendant.

## **CONCLUSION**

Therefore, the Court **DENIES** plaintiffs' motion for reconsideration on all grounds raised, and the Court's prior rulings granting summary judgment in favor of the defendants on the sexual harassment and retaliation claims of plaintiffs Lora Walker, Michelle Groves, Diana Hankins, Wendy Holton, Vickie Howie, Rachel Nutter, Robin Rowold and Jennifer Wingerter shall stand.

This case remains set for a bench trial on the Court's November 14, 2006 docket at 9:00 A.M. The parties shall file their agreed to Final Pretrial Order by November 13, 2006.

**IT IS SO ORDERED.**

**DATED: November 3, 2006.**

                                                **s/ WILLIAM D. STIEHL**
                                                    **DISTRICT JUDGE**